Gary L. LASHBROOK, Appellant,

v.

Michaela M. LASHBROOK, Appellee.

No. S–8195.

Supreme Court of Alaska.

April 24, 1998.

Kenneth Kirk, Anchorage, for Appellant.

Cris W. Rogers, David S. Houston, Houston & Houston, Anchorage, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

OPINION

MATTHEWS, Chief Justice.

## I. INTRODUCTION

This is an appeal from a child custody modification order. The superior court granted the opposed motion to modify custody without a hearing on the best interests of the children. We vacate the order and remand for a hearing on the motion.

## II. FACTS AND PROCEEDINGS

Michaela Lashbrook filed for divorce from Gary Lashbrook on July 29, 1994. Michaela alleged, among other things, that Gary was not fit to have custody of their two daughters, Jessica and Kaela, ages five and three, because he is an alcoholic prone to violent outbursts. Gary was nevertheless awarded interim custody of Jessica and Kaela on September 19, 1994. One month later, Gary was convicted of assaulting Michaela during a domestic dispute in July 1994.

Gary and Michaela reached an agreement on custody which the superior court incorporated into the partial decree of divorce, entered on September 27, 1995. Under the terms of the settlement agreement, Gary and Michaela had joint legal and physical custody of the children. The children resided with each parent for alternating one-week periods.

On February 15, 1997, a week during which Gary had custody of the children, an altercation occurred at Gary's house between Gary and his girlfriend at the time, Cerina Jensen. On behalf of Jessica and Kaela, Michaela filed a domestic violence petition seeking to remove the children from Gary's custody. A hearing to determine the need for a domestic violence order was held on March 19, 1997, before Master William Hitchcock. Both Michaela and Gary appeared at the hearing.

Michaela testified that the children were traumatized after returning from Gary's house, and recounted the children's statements as to the events of February 15, 1997. Michaela introduced the information which charged Gary with third degree assault, and which alleged that Gary had placed a gun to Cerina's head. Michaela also testified that Gary had previously been convicted of assaulting her in 1994.

Due to the pending criminal charges, Gary offered limited testimony at the domestic violence hearing. Gary did offer alternative explanations for any trauma exhibited by the children: the police officers traumatized the children by going into their bedroom to wake them; Michaela continues to traumatize them by the lack of stability in her life; and the separation from their father, their home, their pets, and their neighborhood friends traumatizes the children. However, Gary asserted his Fifth Amendment privilege against self-incrimination and did not explain the events of the night in question.

Master Hitchcock found credible evidence that domestic violence occurred between Gary and Cerina on February 15, 1997. Master Hitchcock also found that Jessica and Kaela were in the house, witnessed at least part of the altercation, and were thus indirect victims of domestic violence committed between two intoxicated adults. Pursuant to AS 18.66.100(c)(9), a domestic violence protective order was issued on March 19, 1997, awarding temporary custody to Michaela and supervised visitation to Gary.

After Gary pled no contest to an assault charge and weapons violation for the February 15, 1997 incident, Michaela moved to permanently modify custody on April 24, 1997. Michaela sought sole legal and physical custody with restricted visitation to Gary. Appearing pro se, Gary opposed the motion to modify custody. Gary's motion to modify was supported by his own affidavit, the affidavit of Cerina Jensen explaining the events of February 15, 1997, a psychologist's observations regarding Gary's relationship with the children, and the affidavits of five people who witnessed the dispute between Gary and Michaela in July 1994. Gary expressly requested a hearing on the motion to modify.

On June 5, 1997, the superior court denied Gary's request for a hearing, consolidated the domestic violence proceeding with the divorce proceeding, and granted sole legal and physical custody to Michaela with restricted visitation to Gary. Gary filed a motion to reconsider and argued, among other things, that a hearing should have been ordered because there were contested factual allegations. The superior court did not grant a hearing on the matter.

## III. DISCUSSION

### A. Standard of Review

The adequacy of the notice and hearing afforded a litigant in child custody proceedings involves due process considerations. A constitutional issue presents a question of law which we review de novo, and to which we apply our independent judgment. See Wright v. Black, 856 P.2d 477, 479 (Alaska 1993).

### B. Due Process Requires Appropriate Notice and Opportunity for Hearing on Opposed Motions to Modify Child Custody

A party opposing a motion to modify child custody has the right to a hearing before the superior court grants the motion. See Hernandez v. Freeman, 938 P.2d 1017, 1018 (Alaska 1997). While there is no doubt

that Gary was denied a hearing per se on the motion to modify custody, the parties disagree as to whether Gary's right to a hearing was satisfied by the earlier hearing in the domestic violence proceeding which the superior court subsequently consolidated with the divorce proceeding.

Gary argues that the superior court deprived him of his right to due process under article I, section 7 of the Alaska Constitution.[1] Gary contends that the domestic violence hearing was procedurally infirm because he was only given notice that the proceeding could alter his custody rights for a maximum of six months, and because the domestic violence hearing was an expedited, summary proceeding. Michaela argues that Gary's right to a hearing was satisfied because the "basis for modification of custody was rooted in Gary's violent acts and the need to protect the children, the gravamen of the domestic violence action." We believe that Gary has the better argument.

"Procedural due process under the Alaska Constitution requires 'notice and opportunity for hearing appropriate to the nature of the case.'" Wright v. Black, 856 P.2d 477, 480 (Alaska 1993) (quoting Aguchak v. Montgomery Ward Co., 520 P.2d 1352, 1356 (Alaska 1974)). "It is essential to contested custody proceedings that the parties be afforded a hearing which grants them the opportunity to present the quantum of evidence needed to make an informed and principled determination." Cushing v. Painter, 666 P.2d 1044, 1046 (Alaska 1983); see also Hernandez, 938 P.2d at 1018; Howlett v. Howlett, 890 P.2d 1125, 1127 (Alaska 1995); T.M.C. v. S.A.C., 858 P.2d 315, 318 (Alaska 1993). An evaluation of the custody modification statute, AS 25.20.110, in relation to the domestic violence statute, AS 18.66.100, indicates that Gary was provided neither notice nor an opportunity for hearing appropriate to a permanent modification of custody.

The ultimate focus of the custody modification statute is the best interests of the children. See Lee v. Cox, 790 P.2d 1359,

---

1. "No person shall be deprived of life, liberty, or property, without due process of law." Alaska Const. art. I, § 7.

1363–64 (Alaska 1990). The best interests determination involves consideration of the nine factors listed in AS 25.24.150(c). Those factors include, but are not limited to, evidence of domestic violence in the custodial household or a history of violence between the parents. *See* AS 25.24.150(c)(7). This court has previously addressed the procedural mechanism and substantive standards of AS 25.20.110.

> A child custody or visitation award "may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests" of the children involved. AS 25.20.110. The parent making the motion for custody modification bears the burden of proving a substantial change of circumstances as a threshold matter. *Lee v. Cox,* 790 P.2d 1359, 1361 (Alaska 1990); *Garding v. Garding,* 767 P.2d 183, 184–85 (Alaska 1989). Once the movant meets that burden, he or she is entitled "to a hearing to consider whether, in light of such changed circumstances, it is in the child's best interest to alter the existing custodial arrangement." *Lee,* 790 P.2d at 1361. The burden of proof remains on the parent making the motion to "demonstrate that the changed circumstances, considered in conjunction with other relevant facts bearing upon the child's best interests, warrant modification of the existing custody decree." *Id.*

*A.H. v. W.P.,* 896 P.2d 240, 244 (Alaska 1995) (quoting *Long v. Long,* 816 P.2d 145, 150 (Alaska 1991)).

In a custody modification proceeding, an intervening finding of a crime involving domestic violence is a changed circumstance as a matter of law. *See* AS 25.20.110(c). In the instant case, the domestic violence finding and Gary's subsequent criminal conviction constitute a changed circumstance under AS 25.20.110(c). However, the domestic violence finding only satisfied Michaela's threshold burden of establishing changed circumstances. For a permanent custody modification to be granted, Michaela still had the burden to prove that "the changed circumstances, considered in conjunction with other relevant facts bearing upon the child's best interests, warrant modification of the existing custody decree." *Long,* 816 P.2d at 150 (quoting *Lee v. Cox,* 790 P.2d 1359, 1361 (Alaska 1990)).

In sharp contrast, the exclusive focus of AS 18.66.100 is domestic violence. If the court finds by a preponderance of the evidence that the "respondent has committed a crime involving domestic violence against the petitioner," the statute permits the court to alter an existing custody order to "award *temporary* custody of a minor child to the petitioner," for a period of "*six months* unless earlier dissolved by court order." AS 18.66.100(b), (c)(9), (b)(2) (emphases added). Thus, the statute is designed to provide emergency relief from domestic violence on a short-term basis, presumably until more permanent relief can be sought and fashioned.

*Cushing v. Painter,* 666 P.2d 1044 (Alaska 1983), addressed the issue of whether an expedited hearing on temporary custody was sufficient to satisfy the hearing requirements for permanent custody modification. The answer was no. In *Cushing,* the superior court transformed an expedited hearing on interim custody for one school year into a permanent custody proceeding. *See id.* at 1046. We concluded that the parties were given neither adequate notice of the nature of the proceeding nor adequate time to prepare because the hearing was expedited. *See id.* Accordingly, we vacated the order modifying custody and remanded for a full hearing on the issue of permanent custody. *See id.*

The superior court's reliance upon the hearing in the domestic violence proceeding does not pass muster for purposes of permanently modifying custody. Domestic violence proceedings and custody modification proceedings are distinct proceedings. The domestic violence hearing was directed at an award of temporary custody for six months or less based upon the sole finding that domestic violence had occurred. Neither party was given notice that permanent custody was also at issue. Although the finding of domestic violence constituted a changed circumstance, the eight other factors specified in AS 25.24.150(c) that are relevant to the children's best interests were not addressed at the domestic violence hearing. Further,

the superior court did not conduct a hearing at which evidence was presented on the remaining factors. Accordingly, Gary was denied an appropriate hearing with respect to the permanent modification of his custodial rights.

## IV. CONCLUSION

The order of June 5, 1997, is VACATED, and the case is REMANDED for a hearing on Michaela's motion to modify custody.[2]

---

**2.** On remand, Gary will be precluded from challenging the facts which constitute the elements of the offenses to which he pled no contest stemming from the February 15 incident. *See Burci-* na v. City of Ketchikan, 902 P.2d 817, 822 (Alaska 1995) ("[A] civil plaintiff is collaterally estopped from relitigating any element of a criminal charge to which he has pled nolo contendere.").