15 P.3d 253 (2001)
J.M.R., Appellant,
v.
S.T.R. and C.C.R., Appellees.
No. S-9490.
Supreme Court of Alaska.
January 5, 2001.
Rehearing Granted in Part February 20, 2001.
Vincent Vitale, Law Office of Vincent Vitale, Anchorage, for Appellant.
S.T.R. and C.C.R., Scottsdale, AZ, pro se.
Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*254 OPINION

MATTHEWS, Justice.

I. INTRODUCTION

Julia R.[1] appeals the denial of her domestic violence petition for temporary custody of her grandchildren. Because a domestic violence petition is an inappropriate proceeding for a non-parent to litigate custody and visitation issues, we affirm.

II. FACTS AND PROCEEDINGS

Julia is the mother of Stuart R. and the grandmother of C.R. and M.R. Stuart is married to Constance, who is the mother of both children. Despite past marital difficulties, Stuart and Constance currently live together with their children. Although she has neither legal nor physical custody of the children, Julia considers herself a "psychological parent" to C.R. and M.R., who are six years old and two years old, respectively. Both children used to visit Julia frequently, often spending the night.
On November 17, 1999, Julia petitioned the superior court for a long-term domestic violence protective order against Stuart and Constance under AS 18.66.100[2] and an emergency twenty-day protective order under AS 18.66.110.[3] In her petition, Julia alleged that she was a victim of "domestic violence" perpetrated against her by both Stuart and Constance. She claimed that Stuartwho was living with her at the timehad stolen prescription medicine from her in May and has a history of domestic violence and a drug problem. She alleged that Constancewho had lived with her in the past but was now living in a separate househad tried to force her way into Julia's house to talk to Stuart and had physically assaulted Julia when Julia barred her entry. Julia further alleged that Constance had stolen a camera from her house to pawn for drug money and that Constance frequently harassed her by telephone.
As part of her petition for a domestic violence protective order, Julia also requested sole custody of C.R. and M.R. Julia alleged that Stuart and Constance were unfit parents because of their drug abuse and their violent tendencies toward one another, but did not allege that M.R. or C.R. had been assaulted by either of their parents. Julia's petition also requested that the court condition Stuart and Constance's visitation of their children on drug treatment and weekly urinalysis.
After listening to evidence from Julia, Stuart and Constance, Superior Court Judge *255 Brian Shortell granted an emergency protective order against Constance but declined to issue an emergency order against Stuart. Judge Shortell explained that there was probable cause to support the allegations of assault, harassment, and burglary against Constance, but that the evidence against Stuart was limited to one incident which occurred a long time before Julia's petition was filed and there was no evidence that he was currently using drugs or was a real threat to Julia.
Judge Shortell denied Julia's request for sole custody, finding that the custody issue was not "properly part of the domestic violence proceeding" and that "[a custody action] shouldn't come in disguise to the court building masquerading as a domestic violence action." He noted that the magistrate would revisit the custody question in the next hearing, but expressed deep skepticism about the magistrate's willingness to credit this kind of custody request in a domestic violence proceeding.
On December 15, 1999, Magistrate Suzanne Cole heard evidence regarding Julia's request for a long-term domestic violence protective order against Stuart and Constance. Constance attended the hearing telephonically. Stuart did not appear at the hearing and was reached telephonically only at the end of the hearing, after he had lost the opportunity to contest the evidence against him. Finding that both Constance and Stuart had committed domestic violence against Julia, Magistrate Cole issued a protective order prohibiting Constance and Stuart from contacting Julia without her permission except for purposes of visitation. The order also prohibited Stuart and Constance from possessing or using illegal drugs and ordered them to undergo substance abuse treatment.
Although the magistrate granted both of Julia's requests for protective orders, she denied the request for sole custody of the children. The magistrate explained that a domestic violence hearing was the wrong forum for this kind of custody request:
The usual posture in a domestic violence case regarding minor children, is one parent seeking an order for custody or visitation against another parent. While the statute does not exclude non-parents from obtaining custody or visitation, the relief requested here is an extraordinary measure, which is neither explicitly nor implicitly endorsed by the statute.... [Julia's] desire to obtain custody of her grandchildren, which may or may not be in their best interest, would best be pursued in a full custody case. A domestic violence hearing is an expedited, summary proceeding.... The full resources available in a custody proceeding, such as full custody investigations, expert testimony, extended hearings, are not available in this summary proceeding. Without any evidence that the children were themselves victims of crimes of domestic violence, this court is unwilling to disrupt the children's lives and snatch them from their parents without such a full-blown best interests investigation.
The magistrate also denied Julia's request for visitation rights and refused Julia's repeated requests that Stuart and Constance disclose their home address.
Also at the December 15, 1999, protective order hearing, Constance, appearing telephonically from Arizona, informed Magistrate Cole that she did not know Stuart's whereabouts and had not spoken to him for several days. The magistrate later discovered this statement to be untrue. Although the magistrate originally set a hearing, and Julia subsequently filed a motion to show cause, the magistrate ultimately declined to pursue the question of whether Constance's deliberately misleading statements amounted to contempt of court. The magistrate reasoned that the court's authority was not compromised by Constance's actions because Constance was neither under oath when she lied nor under any order to provide information on Stuart's whereabouts. The magistrate noted also that Constance's misrepresentation was neither prejudicial to Julia nor material to the case because the court had already granted Julia's requests for protective orders before the misrepresentation took place.
Julia now appeals Magistrate Cole's ruling denying her custody request, along with *256 Judge Shortell's earlier ruling. Julia also appeals three of the magistrate's other rulings: (1) the denial of Julia's requests for visitation, (2) the decision to keep Constance and Stuart's address confidential,[4] and (3) the decision not to hold Constance in contempt of court for lying about her knowledge of Stuart's whereabouts.

III. STANDARD OF REVIEW

This appeal concerns the proper interpretation of AS 18.66.100 and AS 18.66.110. The interpretation of a statute presents a question of law, which this court reviews de novo, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[5]

IV. DISCUSSION

A. Julia Is Not Entitled to Pursue Custody of M.R. and C.R. Through Her Domestic Violence Petition.

Alaska Statute 18.66.100 states in relevant part:
(a) A person who is or has been a victim of a crime involving domestic violence may file a petition in the district or superior court for a protective order against a household member ....
....
(c) A protective order under this section may
....
(9) award temporary custody of a minor child to the petitioner and may arrange for visitation with a minor child if the safety of the child and the petitioner can be protected; if visitation is allowed, the court may order visitation under the conditions provided in AS 25.20.061.
Julia interprets this language broadly. She argues that under this statute, any household member can both petition for a protective order against another abusive household member and petition for custody of the abuser's children at the same time. Based on the legislature's use of the word "petitioner" rather than "parent" when addressing custody, Julia contends that the legislature must have intended that non-parents could use the domestic violence proceedings to pursue custody of an abuser's children.
We believe that both Judge Shortell and Magistrate Cole properly declined to entertain Julia's custody requests in the context of a domestic violence proceeding. While the word "petitioner" can mean people other than "parents," we agree with the observations of Judge Shortell and Magistrate Cole that domestic violence proceedings are generally inappropriate for litigation of custodial claims by parties who do not have a pre-existing custodial relationship with the children. As Magistrate Cole noted, Julia's position could lead to absurd results:
This court is wary of the interpretation advanced by the petitioner; that any petitioner, regardless of their legal or psychological relationship to a respondent's minor children, could obtain custody in a domestic violence proceeding by merely showing that the petitioner (and not the children) is a victim of domestic violence. For example, under this interpretation, a parent's temporary roommate could come into court and obtain custody of unrelated, barely known children by simply proving that the parent had at one time assaulted the petitioner/roommate.
Further, the limited purpose of the domestic violence statute suggests that the reluctance exercised below by the judge and magistrate to allow a grandparent's custody claim to be litigated in a domestic violence proceeding was well advised. As this court recognized in Lashbrook v. Lashbrook,[6] "the *257 exclusive focus of AS 18.66.100 is domestic violence .... [T]he statute is designed to provide emergency relief from domestic violence on a short-term basis, presumably until more permanent relief can be sought and fashioned."[7] Domestic violence proceedings under AS 18.66.100 and .110 are designed to be quick and efficient. As the magistrate noted, they are expedited summary cases that are not well suited for litigating complex custody issues:
[Julia's] desire to obtain custody of her grandchildren, which may or may not be in their best interest, would best be pursued in a full custody case. A domestic violence hearing is an expedited, summary proceeding.... The full resources available in a custody proceeding, such as full custody investigations, expert testimony, extended hearings, are not available in this summary proceeding.
In addition, certain procedures are available in a full custody hearing that are unavailable in a domestic violence proceeding. For example, in custody hearings under AS 25.24.310 the court can appoint a guardian ad litem or lawyer from the office of public advocacy to represent minor children in a custody or visitation proceeding, ensuring that the children's voices are heard and that their interests are recognized. But in domestic violence hearings under AS 18.66.100 the court is prohibited from appointing a guardian ad litem or lawyer from the office of public advocacy unless the domestic violence petition was filed on behalf of a minor child.
Thus, because of the summary and expedited nature of domestic violence proceedings, Judge Shortell and Magistrate Cole did not err in declining Julia's request to litigate her custody claim in the context of her domestic violence petition. That Julia's request was only for a "temporary" change in custody did not make it any more appropriate for determination in a domestic violence proceeding. Any change in custody  no matter how short  is potentially traumatic for the children involved. Moreover, Julia's pursuit of custody directly implicated Stuart and Constance's constitutional rights as parents.
The right to the care and custody of one's own child is a fundamental right recognized by both the federal and state constitutions.[8] This court has long held that the courts should not remove custody from a parent absent compelling justification. Thus, in Turner v. Pannick,[9] this court held that a non-parent could obtain custody from a parent only if the non-parent proved that the parent was unfit or that transferring custody was required for the "welfare of the child," a higher standard than the "best interests" analysis generally used in custody actions.[10] Shortcut domestic violence procedures are ill-suited to the adjudication of fundamental parental rights.
We hold that trial courts have discretion to decline to permit litigation of custody claims asserted by non-parents or legal guardians in domestic violence proceedings. We therefore affirm the rulings below denying Julia's request for custody.

2. Julia's Other Points on Appeal Are Without Merit.

1. The visitation issue

Julia claims that the lower court erred by refusing to grant her visitation as part of the protective order against Constance and Stuart. Julia's request for visitation *258 as part of her protective order is based on the same rationale as her request for custody. It is just as problematic. We conclude that her request for visitation was properly rejected on the same discretionary grounds employed to deny her custody request.
Further, visitation issues most often arise in domestic violence proceedings in situations where the abuser is ordered to have no contact with the victim who has custody of the parties' children. It may be desirable to permit the abuser to visit the children and courts are authorized to provide for this in cases where the safety of the victim and the children is not threatened.[11] Julia's circumstances  as a non-parent who is not a legal custodian and has no adjudicated visitation rights  are not within the core contemplation of the statute. There was therefore no requirement that she be ensured visitation rights in the domestic violence proceeding.
There are established procedures which a grandparent may use in an effort to obtain visitation rights.[12] Julia should use these rather than the summary domestic violence procedures.

2. The contempt issue

Julia argues that Magistrate Cole erred in canceling the order which required Constance to show cause why she should not be held in contempt for falsely stating to the court at a telephonic hearing that she did not know where Stuart was. The magistrate declined to proceed further upon finding, among other things, that Constance's misrepresentation was immaterial and had done no harm. In our view the prosecution of a contempt committed in the presence of a judicial officer is a matter within the discretion of the officer.[13] Given the findings made by Magistrate Cole, she did not abuse her discretion in deciding to proceed no further. Julia's appeal on this issue is therefore without merit.

V. CONCLUSION

Because a domestic violence petition is an inappropriate proceeding for a non-parent to litigate custody and visitation issues regarding children who are currently in their parents' custody, and the magistrate did not abuse her discretion in declining to prosecute Constance for contempt, we AFFIRM the rulings of the magistrate and the superior court.
NOTES
[1] The names of the parties are pseudonyms to protect the privacy of the children involved in this case.
[2] AS 18.66.100 provides in relevant part:

(a) A person who is or has been a victim of a crime involving domestic violence may file a petition in the district or superior court for a protective order against a household member. A parent, guardian, or other representative appointed by the court under this section, may file a petition for a protective order on behalf of a minor. The court may appoint a guardian ad litem or attorney to represent the minor....
(b) When a petition for a protective order is filed, the court shall schedule a hearing, and provide at least 10 days' notice to the respondent of the hearing and of the respondent's right to appear and be heard, either in person or by an attorney. If the court finds by a preponderance of evidence that the respondent has committed a crime involving domestic violence against the petitioner, regardless of whether the respondent appears at the hearing, the court may order any relief available under (c) of this section. The provisions of a protective order issued under
(1) (c)(1) of this section are effective until further order of the court;
(2) (c)(2)-(16) of this section are effective for six months unless earlier dissolved by court order.
[3] AS 18.66.110 provides in relevant part:

(a) A person who is a victim of a crime involving domestic violence may file a petition under AS 18.66.100(a) and request an ex parte protective order. If the court finds that the petition establishes probable cause that a crime involving domestic violence has occurred, it is necessary to protect the petitioner from domestic violence, and if the petitioner has certified to the court in writing the efforts, if any, that have been made to provide notice to the respondent, the court shall ex parte and without notice to the respondent issue a protective order. An ex parte protective order may grant the protection provided by AS 18.66.100(c)(1)-(5), (8)-(12), and (16). An ex parte protective order expires 20 days after it is issued unless dissolved earlier by the court at the request of either the petitioner or the respondent and after notice and, if requested, a hearing....
[4] Julia claims that "there is no statutory authority" for the magistrate's decision to keep Stuart and Constance's home address confidential and that the magistrate's decision "directly contravenes Civil Rule 65.1." As Julia concedes, however, this issue is now moot because she has obtained Stuart and Constance's home address.
[5] Gossman v. Greatland Directional Drilling, Inc., 973 P.2d 93, 95 (Alaska 1999) (citing Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).
[6] 957 P.2d 326 (Alaska 1998). Lashbrook involved a father who lost custody in a protective order proceeding filed on behalf of his children by his ex-wife after he assaulted his girlfriend. See id. at 327. The father was later convicted of assaulting his girlfriend and the mother moved for the temporary custody modification to be made permanent. See id. at 327-28. The court granted her motion and this court reversed, holding that the domestic violence proceeding had not provided the father with adequate notice and opportunity to litigate the custody issues properly. Therefore, a remand for a full "best interests" hearing was needed. See id. at 328-29.
[7] Id. at 329.
[8] See e.g., In re K.L.J., 813 P.2d 276, 279 (Alaska 1991) ("The right to the care, custody, companionship, and control of one's children `undeniably warrants deference and, absent a powerful countervailing interest, protection.'") (quoting Lassiter v. Department of Soc. Servs., 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)).
[9] 540 P.2d 1051 (Alaska 1975).
[10] See id. at 1054 ("In order to satisfy the `welfare of the child' requirement, the non-parent must show that it clearly would be detrimental to the child to permit the parent to have custody.").
[11] See AS 18.66.100(c)(9).
[12] See AS 25.20.065.
[13] Cf. Denovchek v. Board of Trumbull County Comm'rs, 36 Ohio St.3d 14, 520 N.E.2d 1362, 1364 (1988) ("[S]ince the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the trial judge." (citing United States v. United Mine Workers of America, 330 U.S. 258, 303, 67 S.Ct. 677, 91 L.Ed. 884 (1947))).