**In the Matter of Kristine A. SCHMIDT,**

**Regarding Sanctions Imposed in Koivisto v. Koivisto, Superior Court No. 3KN–99–00260 Civil.**

No. S–11427.

Supreme Court of Alaska.

June 24, 2005.

Rehearing Denied July 18, 2005.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Kristine A. Schmidt is an attorney who requested permission to file a late brief after the superior court master had set a firm date for concurrent briefing and announced that no extensions would be granted. The superior court master accepted Schmidt's late brief but allowed the opposing party to file a reply brief to alleviate the potential for unfair advantage created by the late filing. The superior court instructed Schmidt to pay attorney's fees associated with the opposing party's reply brief pursuant to Alaska Civil Rule 95(a). Later, the superior court, in an apparent oversight, signed a conflicting order, denying the motion to accept the late-filed brief and ordering Schmidt to pay attorney's fees covering the cost of the opposing party's original brief. Because the superior court did not abuse its discretion when it instructed Schmidt to pay attorney's fees associated with the reply brief, we affirm that order. But because it was error to enter the conflicting order rejecting Schmidt's late-filed brief and assessing attorney's fees for the opposing party's original brief, we vacate that order.

## II. FACTS AND PROCEEDINGS

Kristine A. Schmidt is an attorney who represented Hopeful Lucy Koivisto, now Hopeful Lucy Standefer, in divorce proceedings against Clifford Daniel Koivisto. The divorce proceedings were bifurcated and the issues of property division, spousal support, and attorney's fees were tried before Superior Court Master Anne M. Preston on March 1, 2000 and March 29–30, 2000.

At the end of the trial on March 30, Master Preston asked the parties to file post-trial briefs in lieu of closing argument to address matters that remained in dispute.[1] Master Preston asked Schmidt whether she objected to filing a post-trial brief on behalf of Stande-

Robert J. Molloy, Kenai, for Appellant.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

---

1. These matters included the date of separation, property that had been inherited, and spousal support.

fer regarding the outstanding issues. Schmidt responded that she did not object. Master Preston then asked Schmidt whether the post-trial briefs should be filed simultaneously, and Schmidt responded, "That would be fine." When the superior court master asked Schmidt how long she would need to file the brief, Schmidt responded that her work schedule was busy through April 15 and that she would be on vacation for two weeks after that. She requested that the deadline for the closing briefs be "sometime after the first of May." Allan D. Beiswenger, the attorney for Koivisto, then requested an hour for oral argument "in the next few days" in lieu of written post-trial briefs because the matter was "fresh in everyone's mind." Schmidt objected, stating that she did not have time for oral argument, but suggested that Beiswenger could file Koivisto's post-trial brief under seal right away so that she would not see it before the filing deadline. In an attempt to address both attorneys' concerns, the superior court master directed the parties to file simultaneous briefs on May 10 and stated that she was "not going to allow any continuations." The court master also told Beiswenger that he could file Koivisto's brief under seal at an earlier date if he wished to do so while the case was still fresh.

On May 9, 2000, Beiswenger filed Koivisto's post-trial brief. He did not file it under seal. Schmidt did not file Standefer's post-trial brief by the May 10 deadline. Almost a week later, on May 16, a superior court clerk phoned Schmidt's office and told Schmidt's paralegal that Master Preston wished to know if Schmidt was planning to file a post-trial brief. According to the paralegal, "Master Preston wanted Ms. Schmidt to know that it was not necessary to do [a post-trial brief;] however if she chose to file one [Master Preston] wanted Ms. Schmidt to be reminded to file a 'Motion for the Court to Accept Late Filed Papers' because the Post Trial Brief was due on May 10th, 2000." The paralegal stated in her affidavit that she put the clerk on hold and asked Schmidt to affirm that she would file a post-trial brief the

next day, on May 17. The paralegal then informed the clerk that Schmidt would be filing a post-trial brief. According to the paralegal's affidavit, the clerk did not inform her that Schmidt could be subject to sanctions for filing the brief late.

Schmidt filed Standefer's post-trial brief on May 17, 2000. She also filed a motion to accept the late-filed brief pursuant to Alaska Civil Rule 6(b)(2),[2] along with an affidavit explaining that she had filed the brief late due to her busy schedule. In the motion to accept the late-filed brief and also in the supporting affidavit, Schmidt asserted that the trial court had set a May 10 due date for the briefs despite Schmidt's request that the due date be set for the third week of May. Yet, as noted above, the transcript reflects that Schmidt actually asked that the due date be set "sometime after the first of May." When the master scheduled the May 10 due date, she indicated that she had chosen the due date out of deference to Schmidt's schedule.

On May 23 Beiswenger filed both an opposition to the motion to accept the late-filed brief and a motion for sanctions or attorney's fees incurred as a result of the late filing. The motion stated that Beiswenger spent 4.6 hours drafting his client's post-trial brief, resulting in $851 in attorney's fees. Beiswenger's motion requested that the superior court deny Schmidt's motion to accept Standefer's late-filed brief. It also requested that the superior court impose sanctions or attorney's fees in the amount of $851. The motion asserted that "failure to meet deadlines has become more the rule than the exception in this case," and that Schmidt had also failed to file Standefer's witness list, trial brief, and exhibits on time.

On June 20 Superior Court Judge pro tempore M. Frances Neville granted Schmidt's motion to accept the late-filed brief. The superior court stated that it agreed with Beiswenger's argument that "post-trial briefs were to be filed simultaneously, and that [Standefer's] delay gave

---

**2.** Alaska Rule of Civil Procedure 6(b)(2) gives judges discretion to extend deadlines set by court order.

her the unfair advantage of being able to read and respond to points raised in [Koivisto's] brief." Therefore, the superior court authorized Koivisto to file a reply to Standefer's post-trial brief. In addition, the superior court awarded Koivisto reasonable attorney's fees and costs associated with the reply brief pursuant to Alaska Civil Rule 95(a).[3] The superior court instructed Schmidt, rather than Standefer, to pay the fees and costs because "the delay appear[ed] to have been occasioned solely by [Standefer's] counsel."

On June 27 Beiswenger filed Koivisto's reply to Standefer's post-trial brief. Beiswenger also filed an itemization of costs and fees claiming $656.40 as the charge for preparing the reply brief. On June 29 Schmidt filed a motion for reconsideration of the superior court's June 20 order, alleging that the order was an abuse of discretion and violated Standefer's constitutional rights.[4] On July 21 the superior court denied Schmidt's motion for reconsideration.

The superior court issued two additional orders on July 21. One was Koivisto's original proposed order denying Standefer's first motion to accept the late-filed brief. This order contradicted the superior court's June 20 order granting the motion to accept the late-filed brief. This order also granted Koivisto the $851 in attorney's fees that he had incurred for the preparation of his initial post-trial brief and did not specify whether Schmidt or Standefer should pay these fees. The second order granted Koivisto the $656.40 that he had incurred for the preparation of his reply brief in response to Standefer's late-filed brief. This order was consistent with the superior court's earlier order that Schmidt, rather than Standefer, should be responsible for the fees, stating that the money was to be "paid within ten (10) days of the date of this *Order* by counsel for Plaintiff, Kristine A. Schmidt, to Allan Beiswenger, attorney for Defendant."

On February 23, 2001, the superior court master issued a master's report regarding the property division, spousal support, and attorney's fees. The report recommended that each party pay its own attorney's fees and costs. Due to Koivisto's subsequent bankruptcy, the superior court did not issue a decision regarding the master's recommendations until May 10, 2002. When the superior court did issue a decision, the superior court adopted all but three of the master's recommendations.

On September 12, 2003, Koivisto wrote a letter to the superior court inquiring about enforcement of the July 21, 2000 orders awarding him attorney's fees for his post-trial brief and his reply to Standefer's late-filed post-trial brief. In response, the trial court issued an order considering the letter a motion to enforce the July 21, 2000 orders and inviting Schmidt to respond to the motion. Schmidt filed a response, arguing that the July 21, 2000 orders were superseded by the court's May 10, 2002 decision adopting the master's recommendation that the parties pay their own attorney's fees. On December 18, 2003, the superior court issued an order granting Koivisto's motion to enforce the July 21, 2000 orders. The superior court observed that the July 21, 2000 orders required Schmidt to pay the attorney's fees within ten days of the orders, and that the master's report was not issued until February 23, 2001, well after the money was due. On March 1, 2004, the superior court entered a judgment against Schmidt in the amount of $1,778.53. The award represented $1,507.40 in attorney's fees plus five percent interest beginning on August 1, 2000. Schmidt appeals the March 1, 2004 judgment.

## III. DISCUSSION

### A. Standard of Review

■ We review awards of attorney's fees and sanctions for abuse of discretion.[5]

---

**3.** Alaska Rule of Civil Procedure 95(a) states: "For any infraction of these rules, the court may withhold or assess costs or attorney's fees as the circumstances of the case and discouragement of like conduct in the future may require; and such costs and attorney's fees may be imposed upon offending attorneys or parties."

**4.** Schmidt filed a memorandum in support of her motion for reconsideration on July 7.

**5.** *McNett v. Alyeska Pipeline Serv. Co.*, 856 P.2d 1165, 1167 (Alaska 1993) (attorney's fees); *Keen v. Ruddy*, 784 P.2d 653, 658 (Alaska 1989) (sanctions).

We review questions of law de novo.[6] We apply our independent judgment when determining whether a party's procedural due process rights have been violated.[7] We also exercise our independent judgment when interpreting a civil rule.[8] The trial court's factual findings are reviewed for clear error.[9]

### B. The Superior Court Did Not Abuse Its Discretion when It Awarded Koivisto Reasonable Attorney's Fees and Costs Associated with the Reply Brief Pursuant to Civil Rule 95(a).

The first order from which Schmidt appeals is the June 20, 2000 order regarding Schmidt's late-filed brief, in which the superior court authorized Koivisto to file a reply brief and instructed Schmidt to pay reasonable attorney's fees and costs associated with Koivisto's reply brief. Because this order was not an abuse of the superior court's discretion, we affirm.

#### 1. Schmidt violated "these rules" as that term is used in Civil Rule 95(a).

■ Schmidt first argues that Civil Rule 95(a) only applies when there has been a violation of one of the Alaska Rules of Civil Procedure. Civil Rule 95(a) states: "For any infraction of these rules, the court may withhold or assess costs or attorney's fees...."[10] The phrase "these rules" is not defined,[11] but Alaska Civil Rule 1 also uses the phrase, stating: "The procedure in the superior court ... shall be governed by these rules in all actions or proceedings of a civil nature...."[12] In addition, Rule 95 is located in Part XIII of the Rules of Civil Procedure.

Part XIII is entitled "General Provisions," and the other rules in this part examine the construction and applicability of the rules of civil procedure.[13] Thus, Schmidt is correct that the phrase "these rules," as used in Civil Rule 95(a), refers to the Alaska Rules of Civil Procedure.

■ In a related argument, Schmidt contends that the superior court was required to specify which civil rule Schmidt had violated when it assessed attorney's fees and costs against her under Civil Rule 95(a). The superior court's June 20 order directed Schmidt to pay reasonable attorney's fees and costs associated with Koivisto's reply brief "[p]ursuant to Alaska Civil Rule 95(a)," but did not indicate which of the civil rules Schmidt had violated.

Schmidt contends that our decision in *Wilson v. Municipality of Anchorage*[14] is directly on point. In *Wilson*, a firefighter sued the Municipality of Anchorage, alleging breach of contract and racial discrimination claims related to the city's hiring and promotional decisions.[15] The superior court concluded that the firefighter's suit was without merit and that filing it "constituted vexatious and bad faith conduct, which counsel, not the client should have recognized."[16] The superior court assessed attorney's fees against the firefighter's attorneys without citing any authority for the award.[17] On appeal, we reversed the award of attorney's fees, noting:

> Alaska Civil Rule 95(a) allows trial courts to award fees against counsel. Fees and costs may be imposed upon attorneys

---

**6.** *Doe v. State, Dep't of Pub. Safety,* 92 P.3d 398, 402 (Alaska 2004).

**7.** *Paxton v. Gavlak,* 100 P.3d 7, 10 (Alaska 2004).

**8.** *S.S.M. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.,* 3 P.3d 342, 344 (Alaska 2000).

**9.** *State, Commercial Fisheries Entry Comm'n v. Carlson,* 65 P.3d 851, 858 (Alaska 2003).

**10.** Alaska R. Civ. P. 95(a).

**11.** We defined the phrase "these rules" as used in then-Civil Rule 72(a) in *State v. 1.163 Acres, More or Less, Chuckwm, Inc.,* 449 P.2d 776, 778 (Alaska 1968), stating: "The phrase 'these rules'

refers to all of the other rules of the Alaska Rules of Court Procedure and Administration." Other language in the case indicates that by this we meant the Alaska Rules of Civil Procedure. *Id.*

**12.** Alaska R. Civ. P. 1 (titled "Scope of Rules—Construction").

**13.** *See* Alaska R. Civ. P. 91, 92.

**14.** 977 P.2d 713 (Alaska 1999).

**15.** *Id.* at 718.

**16.** *Id.* at 726 (quoting superior court's decision).

**17.** *Id.* at 726–27.

"[f]or any infraction of these rules ... as the circumstances of the case and discouragement of like conduct in the future may require." But assessment under Rule 95(a) requires a showing that counsel has violated "these rules." The order awarding fees here did not identify what rules counsel violated, if any.[18]

Based on this language, Schmidt argues that the superior court's order in this case was improper because it did not identify which of the civil rules Schmidt violated by filing her brief late.

But *Wilson* is distinguishable from this case. First, the superior court in *Wilson* failed to mention Civil Rule 95(a) when it assessed attorney's fees against Wilson's attorneys, despite the fact that the municipality had only requested an award of attorney's fees pursuant to Alaska Civil Rule 82.[19] Civil Rule 82 does not authorize an assessment of awards against counsel, so we were left to speculate about whether the award might have been authorized under Civil Rule 95(a).[20] In contrast, the superior court's assessment of attorney's fees against Schmidt in this case specifically cited Civil Rule 95(a).

Second, the superior court in *Wilson* assessed fees against Wilson's attorneys because "the filing of the action constituted vexatious and bad faith conduct."[21] For public policy reasons, it is especially important to require a trial court to make specific findings before assessing fees against attorneys for filing "vexatious" actions—otherwise, attorneys might be deterred from filing legitimate claims on behalf of their clients. Here, Schmidt filed a late brief, despite the superior court master's clear admonition that she was "not going to allow any continua-

tions." The consequences of the superior court's decision to require Schmidt to pay attorney's fees associated with Koivisto's reply brief were foreseeable in that they compensated Koivisto for extra expenses incurred as a result of Schmidt's late filing and deterred Schmidt from filing late briefs in the future.[22] And the superior court's order explained the basis for the sanction: "the court agrees with Mr. Koivisto's [counsel's] argument that post-trial briefs were to be filed simultaneously, and that Ms. Koivisto's delay gave her the unfair advantage of being able to read and respond to points raised in his brief." Thus, while the superior court failed to identify the specific rule that Schmidt violated, the basis for the sanction order was clear.

Moreover, Schmidt is incorrect in her contention that her conduct "did not violate any Alaska Rule of Civil Procedure." This essentially amounts to an argument that litigants do not need to comply with deadlines set by the superior court. Yet Alaska Civil Rule 53(b) authorizes court masters to "exercise the power to regulate all proceedings in every hearing before the master and to do all acts and take all measures necessary or proper for the efficient performance of the master's duties."[23] This rule allows a superior court master to impose reasonable deadlines for litigants. Civil Rule 6, which governs deadlines and permits the trial court to authorize extensions at its discretion, is also predicated upon the superior court's authority to set enforceable deadlines.[24] Civil Rule 16(f) allows the superior court to impose sanctions when an attorney fails to obey a scheduling order,[25] and Rule 46(h) allows the

---

**18.** *Id.* at 727 (quoting Alaska R. Civ. P. 95(a)) (reversing award of fees against counsel and remanding for further proceedings relating to city's motion for award of fees).

**19.** *Id.*

**20.** *Id.*

**21.** *Id.* at 726.

**22.** *See* Alaska R. Civ. P. 95(a), which authorizes the assessment of attorney's fees "as the circumstances of the case and discouragement of like conduct in the future may require."

**23.** Alaska R. Civ. P. 53(b).

**24.** Alaska Rule of Civil Procedure 6(b) states: "When by these rules or by a notice given thereunder or by order of the court an act is required or allowed to be done at or within a specified time...."

**25.** Alaska Rule of Civil Procedure 16(f) states:

If a party or party's attorney fails to obey a scheduling order ... the judge ... may make such orders with regard thereto as are just.... In lieu of or in addition to any other sanction, the judge shall require the party or the attor-

court to fix the time for closing argument.[26] Implicit in each of these rules is the understanding that if the court may set deadlines, litigants must follow them. In *Sheehan v. University of Alaska,* we observed that "adherence to filing deadlines assures the most orderly handling of the Alaska courts' ever-growing caseload. Judicial efficiency and expeditiousness are two pragmatic goals whose observance ensures justice, and we intend to see those goals honored."[27] Thus, our case law recognizes that filing deadlines for briefs are essential to the efficient administration of the judicial system.[28]

Indeed, we have explicitly held that failure to comply with a briefing schedule is reason for imposing sanctions under Civil Rule 95. In *Esch v. Superior Court,* we considered a challenge to a $500 fine that the superior court assessed against an attorney after the attorney filed a late brief.[29] Although we concluded that the superior court had not fulfilled Rule 95(b)'s express language requiring advance notice of the proposed sanctions and an opportunity to respond,[30] we stated that the late filing of a brief is a legitimate reason for imposing sanctions under Rule 95: "We consider the failure to comply with ... a briefing schedule to be a violation of a rule promulgated by this court, sufficient to authorize the imposition of Rule 95(b) sanctions."[31] Our basis for this statement was former Appellate Rule 45(f), which,

like the current version of Civil Rule 16, granted the superior court discretion to set scheduling deadlines.[32]

In *Stephenson v. Superior Court,* we upheld punitive sanctions imposed under Civil Rule 95(b)[33] even though the superior court did not specify which rule the offending lawyer had violated.[34] Here, the superior court did make a finding that the "delay gave [Standefer] the unfair advantage of being able to read and respond to points raised in [Koivisto's] brief." Although the best practice is to specify which rule an attorney has violated, we conclude that if the violation can be gleaned from the text of the order, the order imposing sanctions may be upheld.

■ Schmidt next contests the superior court's finding that the delay created an unfair advantage for Standefer. Schmidt complains that the superior court "did not make any findings identifying facts showing that Ms. Schmidt had read Mr. Koivisto's brief, that Ms. Schmidt had responded to points raised in Mr. Koivisto's brief, or that Ms. Schmidt had violated any identified Alaska Rule of Civil Procedure (or other rule)." But the superior court's factual finding that Schmidt could have read the brief and obtained a tactical advantage as a result of the delay was not clearly erroneous, and Schmidt does not point to any legal authority support-

---

ney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees ....

**26.** The post-trial briefs were to be filed in lieu of closing arguments, and Alaska Rule of Civil Procedure 46(h) states in part: "The court may fix the time allowed each party for opening statements and final argument."

**27.** *Sheehan v. Univ. of Alaska,* 700 P.2d 1295, 1298 (Alaska 1985).

**28.** Schmidt argues that a reading of Civil Rule 95(a) allowing sanctions for conduct that does not violate any rule of civil procedure would render Civil Rule 95(a) unconstitutionally vague for lack of notice of what conduct violates "these rules." But because the civil rules clearly allow a trial court to impose deadlines, attorneys and non-attorneys alike could discern that Rule 95(a) permits the assessment of attorney's fees for disregarding a court deadline.

**29.** *Esch v. Superior Court, Third Judicial Dist.,* 577 P.2d 1039, 1041 (Alaska 1978).

**30.** *Id.* at 1043.

**31.** *Id.* at 1041 n. 1.

**32.** *Id.* In Schmidt's case, the superior court imposed sanctions under Rule 95(a), but our conclusion that a late-filed brief is ground for sanctions applies equally to attorney's fees assessed under Rule 95(a) and sanctions assessed under Rule 95(b).

**33.** Alaska Rule of Civil Procedure 95(b) allows the superior court to fine attorneys "for failure to comply with these rules or any rules promulgated by the supreme court."

**34.** *Stephenson v. Superior Court, Fourth Judicial Dist.,* 697 P.2d 653, 656 n. 7 (Alaska 1985) (noting that "the applicable rules should have been cited as a matter of sound practice") (internal citations omitted).

ing the proposition that the superior court needed to find that Schmidt actually did read Koivisto's brief.[35] Schmidt argues that Koivisto impliedly waived his claim for attorney's fees because he did not file his post-trial brief under seal, thus negating any "unfair advantage" Standefer might have gained by filing her brief late. While it is true that the superior court master instructed Beiswenger that he could file Koivisto's brief under seal, the understanding was that Beiswenger would do so in the event that he filed Koivisto's brief early. As it turned out, Beiswenger filed Koivisto's post-trial brief on May 9, one day before the May 10 deadline. Had Schmidt filed Standefer's brief on time, she would have had one day at the most to gain an unfair advantage by reading Koivisto's brief. Instead, she filed the brief on May 17, more than a week late, giving her ample time to read and respond to the brief if she wished. We conclude that Koivisto did not waive his claim to attorney's fees by failing to file the brief under seal.

We have previously observed that monetary sanctions, such as the assessment of attorney's fees and costs, are an appropriate remedy for late-filed briefs. In fact, we have expressed a preference for monetary sanctions over litigation-ending sanctions. For example, in *Sheehan*, we reviewed the superior court's decision to deny a motion to extend the deadline for filing an opening brief in an administrative appeal.[36] As a result, the appeal was dismissed. We reversed, calling dismissal of the case an "extreme sanction."[37] We observed that "it may have been appropriate for the trial court to impose some sort of monetary sanction according to Appellate Rule 510."[38] Appellate Rule 510 contains language identical to that in Civil Rule 95.[39]

■ Schmidt also argues that the superior court erred by assessing attorney's fees against her after the clerk called to inquire about the late brief and suggested that a late filing be accompanied by a Civil Rule 6(b)(2) motion to accept the late-filed brief. Schmidt argues that by gaining permission to file a late brief, she implicitly cleared herself of any violations of other civil procedure rules, thus protecting herself from Rule 95 sanctions. But as we recognized in *Sheehan*, *Metcalf*, and *Brown*, the superior court may both accept a late-filed brief and assess monetary sanctions for the lateness.[40] In fact, in *Brown*, we vacated the superior court's decision to reject a late brief and then ordered the attorney to pay fees and costs as well as an additional fine.[41] Civil Rule 95(a) specifically states that the superior court may assess attorney's fees against attorneys in order to discourage similar conduct in the future.[42]

Finally, Schmidt argues that the post-trial brief was "voluntary." The implication is that Schmidt would not have been assessed with attorney's fees had she simply not filed a brief at all. Schmidt argued this explicitly in

---

**35.** We have indicated in previous cases that a showing of prejudice would bolster the case for imposing punishment for a late-filed brief, but those cases involved dismissal of the case as a result of the late filing. · See *Metcalf v. Felec Servs.*, 938 P.2d 1023,1025 (Alaska 1997) ("Given that the brief had already been lodged and that appellees demonstrated no prejudice, the harsh remedy of dismissal could be justified only if there had been some controlling principle, such as a need to punish the wrongdoer, deter like conduct, preserve the integrity of the fact finding process, or protect the dignity of the court."); *Sheehan*, 700 P.2d at 1297 ("If the record indicated in any meaningful way that one of the parties or the trial court suffered prejudice ... we would readily affirm" the superior court's denial of the plaintiff's motion for a second extension and the court's dismissal of her case.).

**36.** *Sheehan*, 700 P.2d at 1295–96.

**37.** *Id.* at 1298.

**38.** *Id.*

**39.** Alaska R.App. P. 510(b) and (c); *see also Metcalf*, 938 P.2d at 1025 (suggesting that superior court might have considered less extreme sanction than dismissal for late-filed brief); *Brown v. Brown*, 854 P.2d 732, 732 (Alaska 1993) (vacating superior court's decision to dismiss case where brief was filed late and instead ordering attorney to pay fees, costs, and $500 fine under Appellate Rule 510).

**40.** *Metcalf*, 938 P.2d at 1025; *Brown*, 854 P.2d at 732; *Sheehan*, 700 P.2d at 1298.

**41.** *Brown*, 854 P.2d at 732.

**42.** Alaska R. Civ. P. 95(a).

her memorandum supporting her motion for reconsideration, stating: "Obviously, if Ms. Koivisto had been notified in advance that if she did file a brief, she or her attorney would be fined, it is likely that she would not have filed a brief." But the transcript indicates that the superior court master requested the briefs in lieu of closing argument to address a number of matters that were still in dispute, including the date of separation, identification of property that had been inherited, and the request for spousal support. We are confident that if Schmidt felt that it was in her client's best interests to file the brief, she would have done so as was her duty under Alaska Rule of Professional Conduct 1.3.[43]

Because we could discern from the superior court's order the basis for its imposition of sanctions under Rule 95(a), and because the superior court did not abuse its discretion, we affirm the June 20 order instructing Schmidt to pay attorney's fees for Koivisto's reply brief, as well as the July 21 order specifying that the fees amounted to $656.40.

## 2. Schmidt received adequate notice that she could be assessed fines under Civil Rule 95(a) for filing a late brief.

Schmidt next argues that this court should interpret Civil Rule 95(a) as requiring the superior court to provide advance notice and an opportunity to be heard before assessing attorney's fees and costs under the rule. In contrast to Civil Rule 95(a), Civil Rule 95(b) allows the superior court to assess punitive fines against attorneys only "after reasonable notice and an opportunity to show cause to the contrary, and after hearing by the court, if requested."[44] We have construed the notice requirement in Rule 95(b) to mean that "counsel must be given some opportunity to explain his conduct, before he can be sanctioned."[45]

In *Wilson*, we declined to decide whether Rule 95(a) also requires advance notice before fees may be assessed.[46] Schmidt argues that the due process clauses of the Alaska and United States Constitutions require notice and an opportunity to be heard before the court may assess attorney's fees under Rule 95(a). In *Roadway Express, Inc. v. Piper*, the United States Supreme Court considered a case in which a federal district court assessed fees against an attorney who failed to meet various court deadlines. The Supreme Court confirmed that the due process clause is implicated by such sanctions, reasoning: "Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice of an opportunity for a hearing on the record."[47] But the Supreme Court also observed that "[t]he due process concerns posed by an outright dismissal are plainly greater than those presented by assessing counsel fees against lawyers."[48] Under the Alaska Constitution, notice and opportunity for hearing must be appropriate to the nature of the case.[49]

---

**43.** Alaska Rule of Professional Conduct 1.3 states: "A lawyer shall act with reasonable diligence and promptness in representing a client." The comment to the rule states that "[a] lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer."

**44.** Alaska R. Civ. P. 95(b).

**45.** *Stephenson*, 697 P.2d at 655; *see also Tobey v. Superior Court, Third Judicial Dist.*, 680 P.2d 782, 787 (Alaska 1984) (holding that "the language of Rule 95(b) requires a judge to explicitly notify an attorney when sanctions are being considered and to afford him a reasonable time in which to show cause why the sanctions are not warranted"); *Esch*, 577 P.2d at 1043 (same).

**46.** *Wilson*, 977 P.2d at 727. Because we conclude that any lack of notice was cured in

Schmidt's case, we need not decide the extent to which notice and an opportunity for hearing are required under Civil Rule 95(a). However, we are requesting our Standing Advisory Committee on Civil Rules to consider this question.

**47.** *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (concluding that federal courts possess "inherent power" to assess contempt sanctions). After the Supreme Court decided *Roadway,* Congress amended 28 U.S.C. § 1927 to provide that a court may assess attorney's fees against an attorney. 28 U.S.C. § 1927 (2000); *see Morris v. Adams–Millis Corp.*, 758 F.2d 1352, 1357 n. 7 (10th Cir.1985).

**48.** *Id.* at 767 n. 14, 100 S.Ct. 2455.

**49.** *Lashbrook v. Lashbrook*, 957 P.2d 326, 328 (Alaska 1998).

In this case, any notice deficiency that may have occurred was cured by Schmidt's opportunity to file a motion for reconsideration. Koivisto moved for sanctions and attorney's fees on May 23, 2000. The superior court did not issue its order assessing attorney's fees until June 20, giving Schmidt nearly a full month to respond to Koivisto's motion. But Schmidt never opposed the request for sanctions, instead moving for reconsideration on June 29, after the order had been issued. While it certainly would have been a better practice for the superior court to order Schmidt to show cause why she should not be assessed with attorney's fees before sanctioning her under Rule 95(a), Schmidt could have responded to Koivisto's motion for sanctions. Moreover, the lack of notice was cured because Schmidt had an opportunity to file her motion for reconsideration.[50] In fact, the superior court granted Schmidt an extension to file a memorandum of points and authorities supporting her motion for reconsideration, and Schmidt filed a four-page memorandum on July 7. In her memorandum, Schmidt raised precisely the same arguments that she raises in this appeal. Because Schmidt had an opportunity to challenge the sanction after it was imposed, we conclude that any error resulting from lack of notice was harmless.

### C. The Superior Court Abused Its Discretion when It Changed Course Without Explanation, Issuing the July 21, 2000 Order Denying Schmidt's Motion To Accept the Late–Filed Brief and Instructing Schmidt To Pay Attorney's Fees for Koivisto's Initial Post–Trial Brief.

██ The superior court issued three orders on July 21, 2000. The first order denied Schmidt's motion for reconsideration of the June 20 order instructing Schmidt to pay attorney's fees incurred by Koivisto in filing his reply to Schmidt's late-filed brief. The second order awarded attorney's fees in the amount of $656.40 to compensate Koivisto for the cost of the reply brief, as required by the June 20 order. The superior court also signed the original proposed order submitted

by Koivisto opposing Schmidt's motion to accept the late-filed brief and requesting sanctions in the amount of $851, representing the attorney's time to prepare Koivisto's initial post-trial brief. Because the third order directly contradicted the June 20 order accepting Schmidt's late-filed brief and awarded attorney's fees that Koivisto would have incurred regardless of Schmidt's lateness, we conclude that the order was probably signed in error. Moreover, the order is not supported by any findings and the trial court's apparent change of course in denying the previously granted motion to accept a late-filed brief cannot be sustained.

Koivisto's original memorandum in opposition to Schmidt's motion to accept the late-filed brief and his attached proposed order requested that the superior court reject Standefer's late brief and compensate Koivisto for the preparation of his initial post-trial brief. Koivisto's memorandum asserted that the attorney's fees he incurred for preparation of his post-trial brief were "unnecessary" in light of Schmidt's failure to file a brief for Standefer, implying that the superior court should not consider Koivisto's post-trial brief if it chose to reject Standefer's late brief. Although declining to consider either brief and awarding the cost of Koivisto's initial post-trial brief as a sanction was one approach the superior court could have taken, the superior court instead elected to accept Standefer's late brief and allow Koivisto to file an additional reply brief so that he would have an opportunity to respond to Standefer's late brief in light of her opportunity to review his arguments. The superior court's June 20 order then compensated Koivisto for the fees he incurred to file the reply brief. It is apparent from the superior court's final divorce decision, issued on May 10, 2002, that the superior court considered both parties' post-trial briefs: "[T]he court has reviewed the Master's Report, the tapes of the entire trial, the exhibits admitted at trial, [and] the parties' post-trial briefs." Yet the superior court's June 21, 2000 order purported to reject Standefer's post-trial brief, despite the

---

50. *Cf. Brady v. Fireman's Fund Ins. Cos.,* 484 A.2d 566 (D.C.1984) (holding that trial court erred by imposing sanctions against attorney without notice and hearing, but error was cured by attorney's subsequent challenge to sanctions).

fact that the superior court had previously accepted the brief, allowed Koivisto to file a reply brief, and would later consider all of the briefs in making the property division decision.

And the superior court did not explain why it had decided to reject Schmidt's late-filed brief after accepting it on June 20; nor did the superior court explain its reasons for assessing attorney's fees for the costs incurred by Koivisto in preparing his initial post-trial brief. The superior court also failed to cite Civil Rule 95(a), 95(b), or any other rule authorizing the assessment of attorney's fees for the initial post-trial brief. In this respect the order resembles the order that we reversed in *Wilson*, as it causes us to speculate about the superior court's reasoning and basis for the sanction.[51] If Rule 95(a) was the authority for the award, the court did not indicate its reasons for invoking the rule. As discussed above, when assessing attorney's fees under Rule 95(a), the superior court must provide an explanation of its reasons for assessing the fees, and the preferred practice is to cite a specific rule that has been violated. Because the order disallowing the late brief was incompatible with the original order, we reverse the superior court's July 21, 2000 order rejecting the late-filed brief and assessing attorney's fees in the amount of $851.

### D. Koivisto's Claim for Attorney's Fees Was Not Superseded by the Superior Court's May 10, 2002 Order Adopting the Superior Court Master's Recommendation that Each Party Pay Its Own Attorney's Fees.

Schmidt argues that Koivisto's claim for attorney's fees was superseded by the superior court's May 10, 2002 decision adopting the superior court master's recommendation that each party pay its own attorney's fees. The master's recommendation was issued in a February 23, 2001 report that addressed issues concerning the marital status of various properties, valuation of marital assets and debts, how to divide marital property, Koivisto's disability payments, spousal support, and the children's investment ac-

counts. The recommendation regarding attorney's fees presumably pertained to fees for the entire case.

Schmidt's argument overlooks the fact that she should have paid Koivisto's attorney's fees well before the superior court issued its May 10, 2002 decision. The superior court's June 20, 2000 order instructed Koivisto to file an itemized list of costs and fees associated with the reply brief at the same time he filed the brief. Koivisto did so on June 27. Schmidt moved to reconsider on June 29, and Koivisto opposed the motion on July 17. The superior court's July 21, 2000 orders instructed Schmidt to pay the attorney's fees within ten days. Aside from a July 24, 2000 request to file a reply to Koivisto's opposition to the motion for reconsideration, there is nothing in the record to suggest that Schmidt responded to the July 21 orders or attempted to pay the attorney's fees. In fact, the attorney's fees were not mentioned again until Koivisto wrote a September 12, 2003 letter to the court (without counsel) inquiring about the attorney's fees. In her reply to Koivisto's inquiry, Schmidt asserted that Koivisto could have raised the issue during a continued portion of the trial that was held on March 28, 2002. But Schmidt does not explain why she did not pay the attorney's fees within ten days of the July 21, 2000 order, as instructed by the court. As the superior court observed in its final order regarding the matter, "the Master's Report was issued on February 23, 2001, nearly seven months after the date that the money was due under the July 21, 2000 orders." (Emphasis omitted.) The superior court added that Schmidt never requested relief from the July 21, 2000 orders:

> There is nothing in the file to indicate that the court was aware that plaintiff's counsel had not complied with the July 21, 2000 orders. Nor is there anything in the file demonstrating that the plaintiff requested relief from the July 21, 2000 orders. Finally, the defendant did not waive his right to recover these fees by not raising the issue at trial. The issue of these sanctions

51. *Wilson*, 977 P.2d at 727.

was not pending before the court at the time of trial.

Because the superior court was correct in reasoning that the order to pay attorney's fees was not superseded by the superior court's later decision just because Schmidt delinquently neglected to pay the fees, we conclude that Koivisto's claim for attorney's fees is still valid.

## IV. CONCLUSION

For the reasons discussed above, we AF-FIRM the superior court's June 20, 2000 order granting Schmidt's motion to accept the late-filed brief, authorizing Koivisto to file a reply brief, and awarding Koivisto reasonable attorney's fees associated with the reply brief. We also AFFIRM the July 21, 2000 orders denying reconsideration of the June 20, 2000 order and instructing Schmidt to pay $656.40 within ten days. We VA-CATE the superior court's July 21, 2000 order denying Schmidt's motion to accept the late-filed brief and granting Koivisto attorney's fees associated with the preparation of his initial post-trial brief. We REMAND for entry of judgment against Schmidt in the amount of $656.40 plus prejudgment interest from August 4, 2000.[52]

52. This date is ten business days after July 21, 2000.